**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

JANET AYUSO-FIGUEROA     \*
                              \*
     Plaintiff             \*
                              \*
v.                               \*
                              \*    **Civil No. 02-1606(SEC)**
VICTOR RIVERA-GONZALEZ, et al.   \*
                              \*
     Defendants        \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**OPINION AND ORDER**

Pending before the Court are Co-defendants Ronald Golderos', Glidden Maldonado's, Laura Rivera's and Nilda Rivera's motion for summary judgment (Docket # 77) and Co-defendant Carlos Torres' motion for summary judgment (Docket # 79). Plaintiff has filed an opposition to both motions (Dockets ## 111 & 112)[1]. Defendants replied (Docket # 124) and Plaintiff sur-replied (Docket # 129). After carefully examining the parties' arguments, the case record and the applicable law, Co-defendants Golderos', Maldonado's, L.Rivera's and N.Rivera's motion will be **GRANTED in part and DENIED in part** and Co-defendant Torres' motion will be **DENIED**.

**Factual Background**

Prior to July 20, 1989, Puerto Rico Law 116 of July 22, 1974 ("Law 116") provided that **all** convicted persons who observed good conduct and assiduousness were entitled to receive certain reductions and time credits to their prison terms. 4 P.R. Laws Ann. § 1161. Law 116 also provided that certain convicts could receive, at the **discretion** of the Corrections Administrator, credits for time spent working and/or studying. 4 P.R. Laws Ann. §1162. Then, on July 20, 1989 the Puerto Rico Legislature amended said statute by expressly

---

[1] In consideration of Plaintiff's financial situation, and the parties' agreement, the Court has adjudicated Defendants' motions while considering Plaintiff's Spanish language exhibits. See Docket # 118-119. However, it is important that **at least those exhibits used by the Court to deny the entry of summary judgment** be made part of the record in the English language. Local Rules 10(b) & 43; Cordero-Soto v. Island Fin., Inc., 418 F.3d 114, 118 (1st Cir. 2005). Therefore, Plaintiff's are hereby **ORDERED** to file said exhibits translated into English by **December 19, 2005**.

_____

excluding aggravated second offenders and habitual second offenders from receiving reductions and time credits to their prison terms for good conduct and/or work/study. Puerto Rico Law 27 of July 20, 1989, 4 P.R. Laws Ann. § 1112(b) & (e), 1136 & 1161-1163 ("Law 27"). Upon reviewing the application of said amendment, on January 31, 1992, the Puerto Rico Supreme Court issued a decision by which it established that Law 27 could not have retroactive application. Pueblo de Puerto Rico v. Pizarro Solis, 129 D.P.R. 911 (1992). Specifically, the Puerto Rico Supreme Court held that a retroactive application of said law would violate prisoners' constitutional rights and that as such, any habitual offender sentenced prior to July 20, 1989, the date of the enactment of Law 27, would be entitled to receive time credits and reductions to their prison terms in accordance with the previous aforementioned provisions of Law 116. Id. at 927-28.

Against this backdrop, we recount the facts of the instant case. On July 19, 1989 Plaintiff was sentenced as an aggravated second offender[2] to twenty (20) years in prison for robbery, assault and breaking and entry. Plaintiff was incarcerated first at the Vega Alta Correction Center (herein "Vega Alta facility") and then at the Women's Complex of the Ponce Correctional Center (herein "Ponce facility"), both under the jurisdiction of the Corrections Administration of the Commonwealth of Puerto Rico. During the time that Plaintiff was incarcerated at the Vega Alta facility she received the credits and reductions for good behavior and work/study. However, upon being transferred to the Ponce facility, and after the issuance of the Pizarro Solis decision, Plaintiff's sentence was recalculated and she was denied the credits and time reductions provided under Law 116, in effect reinstating her previous sentence of twenty (20) natural years. After various procedural hurdles, on April 24,

_____

[2] Under the 1974 Puerto Rico Penal Code repetitive criminal offenders are separated in three categories for purposes of calculating their prison sentence: second offender, aggravated second offender and habitual second offender. 33 P.R. Laws Ann. § 3301-02. A new Puerto Rico Penal Code, which varied the sentence computation for repetitive offenders, was approved on June 18, 2004. See Puerto Rico Law 149 of June 18, 2004.

Civil No. 02-1606(SEC)                                                                                    3
_____

2001 Plaintiff was summarily released from the Ponce facility, as her previous time credits and reductions were reinstated. In fact, taking into account Plaintiffs' time credits and reductions, her sentence had been extinguished since approximately March 1999.

Plaintiff has filed the instant suit claiming relief for the temporary denial of the time credits and reductions which resulted in the substantial lengthening of her imprisonment term. Accordingly, Plaintiff has pled causes of action under Section 1983 for violations to the Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution. Plaintiff has also pled supplemental law claims under Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. §§ 5141-42.

### Standard of Review

Fed. R. Civ. P. 56(b) provides that: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); NASCO, Inc. v. Pub. Storage, Inc., 29 F.3d 28 (1st Cir. 1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2725, p.401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. U.S. v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992); see also Boston Athletic Assn. v. Sullivan, 867 F.2d 22, 24 (1st Cir. 1989); Medina-Muñoz v. R.J. Reynolds Tobacco, 896 F.2d 5, 8 (1st Cir. 1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable

_____

to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law.  Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994).  "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, supra, § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial.  It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." Martínez v. Colón, 54 F.3d 980, 983-84 (1st Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence.  Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." Id. (citing Greensburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. Casas Office Machs., 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the nonmoving party's case," Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1984); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." Lawton v. State Mut. Life Assurance Co. of Am., 101 F.3d 218, 223 (1st Cir. 1996).  Furthermore, "the nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue. . . .  Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to

_____

prove fraught with consequence."); Medina Muñoz, 896 F.2d at 8, (quoting Mack v. Great
Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence
illustrating the factual controversy cannot be conjectural or problematic; it must have
substance in the sense that it limns differing versions of the truth which a factfinder must
resolve.")

Local Rule 56(b), moreover, requires the moving party to file annexed to the motion
"a separate, short, and concise statement of material facts, set forth in numbered paragraphs,
as to which the moving party contends there is no genuine issue of material fact to be tried."
Unless the non-moving party controverts this statement, all the material facts set forth therein
"shall be deemed to be admitted." Id.; Cosme-Rosado v. Rosado-Figueroa, 360 F.3d 42 (1st
Cir. 2004). This is the so-called "anti-ferret rule." See, e.g., Orbi, S.A. v. Calvesbert &
Brown, 20 F. Supp. 2d 289, 291 (D.P.R. 1998). While failure to comply with this rule does
not automatically warrant the granting of summary judgment, "it launches the nonmovant's
case down the road toward an early dismissal." Tavárez v. Champion Prods., Inc., 903 F.
Supp. 268, 270 (D.P.R. 1995).

**Applicable Law and Analysis**

**I. Section 1983**

Section 1983 in itself does not confer substantive rights, but provides a venue for
vindicating federal rights elsewhere conferred. See Graham v. M.S. Connor, 490 U.S. 386,
393-394 (1989). In order to establish liability under Section 1983, a plaintiff must first show
that "the conduct complained of was committed by a person acting under color of state law."
Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v.
Williams, 474 U.S. 327 (1986); Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 559 (1st Cir.
1989); Saugus v. Voutour, 474 U.S. 1100 (1986); Voutour v. Vitale, 761 F.2d 812, 819 (1st
Cir. 1985).

Second, a plaintiff must show that the defendant's conduct deprived a person of rights,

_____

privileges or immunities secured by the Constitution or laws of the United States. See Parratt,
451 U.S. at 535; Gutiérrez-Rodríguez, 882 F.2d at 559.  This second prong has two aspects:
(1) there must have been an actual deprivation of the plaintiff's federally protected rights;
and (2) there must have been a causal connection between the defendant's conduct and the
deprivation of the plaintiff's federal rights.  See Gutiérrez-Rodríguez, 882 F.2d at 559;
Voutour, 761 F.2d at 819.  In turn, this second element of causal connection requires that the
plaintiff establish: (1) **for each defendant**, that the defendant's own actions deprived the
plaintiff of his/her protected rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 n. 58
(1978); Gutiérrez-Rodríguez, 882 F.2d at 562; Figueroa v. Aponte-Roque, 864 F.2d 947, 953
(1st Cir. 1989); and (2) that the defendant's conduct was intentional. Simmons v. Dickhaut,
804 F.2d 182, 185 (1st Cir. 1986), grossly negligent, or amounted to a reckless or callous
indifference to the plaintiff's constitutional rights. See Gutiérrez-Rodríguez, 882 F.2d at 562.

### 1. Co-defendants Golderos, N.Rivera, L.Rivera & Maldonado

In support of their request for summary judgment, Co-defendants Golderos, N.Rivera,
L.Rivera and Maldonado propose, in the alternative, that: (1) they were not personally
involved in the alleged constitutional deprivations, (2) Plaintiff did not have a liberty interest
in the time credits and prison term reductions at issue, or (3) Plaintiff's claims under Section
1983 are time barred (Docket # 77 at pp. 8-13). Because we agree that Plaintiff has failed to
present any evidence of, or even allege that, any personal acts committed by Co-defendants
Golderos, N.Rivera and L.Rivera in violation of her rights under the U.S. Constitution, there
is no need to address the last two arguments posed by said Co-defendants. We address the
factual allegations against each Co-defendant separately.

### a. Co-defendant Golderos

Co-defendants argue that Co-defendant Golderos, Director of Criminal Records of the
Corrections Administration, had no direct contact with Plaintiff and that Co-defendant
Golderos' only relation to the instant matter is that he was the person who in 2001 brought

_____

Plaintiff's case to the attention of the Director of the Legal Division of the Corrections Administration which prompted Plaintiff's subsequent release from prison (Docket # 77 at p. 9). Plaintiff counters by seeking that the Court strike Co-defendant Golderos' answers to the interrogatories furnished by Plaintiff, evidence used by Co-defendant Golderos to support his request for summary disposition, as these allegedly fail to comply with Rule 33(b)(1) of the Federal Rules of Civil Procedure (Docket # 113, SUF No. 9). Plaintiff then contends that absent said evidence, Co-defendant Golderos lacks any evidence of his lack of personal involvement in the alleged violations of Plaintiff's rights under the U.S. Constitution and that his request must be denied. We disagree.

Rule 33(b)(1) of the Federal Rules of Civil Procedure states that "[e]ach interrogatory shall be answered separately and fully in writing under oath." Fed.R.Civ.P. 33(b)(1). In the case at bar, Co-defendant Golderos' answers, though signed by him under penalty of perjury, were not sworn. See Docket # 78, Ex. 20a. In Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., the First Circuit specifically held that "[u]nder federal law, an unsworn statement signed under penalty of perjury may be used, in lieu of a sworn statement or affidavit, to support or oppose a motion for summary judgment." 982 F.2d 686, 689-90 (1st Cir. 1993)(citing 28 U.S.C. § 1746; Pfeiel v. Roberts, 757 F.2d 850, 859 (7th Cir. 1985); Davis v. Frapolly, 756 F.Supp.1065, 1067 (N.D.Ill. 1991)). Thus, as Co-defendant Golderos' answers, submitted in support of his request for summary judgment, were signed and dated under penalty of perjury, these may be considered in his request for summary disposition of Plaintiff's claims against him.

As such it remains uncontested that Co-defendant Golderos had no direct contact with Plaintiff and that his involvement in Plaintiff's case took place in April 2001 and for the limited purpose of aiding Plaintiff to achieve her immediate release from prison  (Docket # 78, Ex. 20a). It must also be noted that upon examining the record as a whole, we have found that the record is completely devoid of any evidence of Co-defendant Golderos' actions or

_____

omissions which could have resulted in the violation of Plaintiff's rights under the U.S. Constitution. Plaintiff has neither pled, nor evidenced, Co-defendant Golderos' involvement in the alleged violation of her rights. Accordingly, there are no issues of fact that would prevent the entry of judgment at this stage of the proceedings. Gutierrez-Rodríguez, 882 F.2d at 560-61 (1st Cir. 1989) (a person may be held liable under Section 1983 if he/she "does an affirmative act, participates in another's affirmative acts, or omits to perform an affirmative act which he is legally required to do" that causes a deprivation of constitutional rights. Therefore, a showing of personal involvement, as well as a causal connection, is imperative to prevail on a Section 1983 claim.) Consequently, Plaintiff's Section 1983 claims against Co-defendant Golderos will be **DISMISSED WITH PREJUDICE**.

### b. Co-defendants N.Rivera & L.Rivera

As to Co-defendants N.Rivera and L.Rivera, in opposition to their request for summary judgment, Plaintiff again raises the same argument, to wit, that their answers to the interrogatories should be stricken as these fail to comply with Fed.R.Civ.P. 33(b)(1) (Docket # 111 at pp. 2-3). The Court notes the aforementioned answers were signed under penalty of perjury but were not dated. See Docket # 78, Exs. 17 & 18. Technically Plaintiffs are correct that these answers fail to comport with the requirements set forth by Rule 33(b)(1) and that, as such, the Court should disregard said exhibit and not consider it as evidence of Co-defendants N.Rivera's and L.Rivera's lack of personal involvement in the alleged violations of Plaintiff's constitutional rights. Notwithstanding, Co-defendants N.Rivera's    and L.Rivera's motion for summary judgment should be granted as Plaintiff has utterly failed to introduce any evidence from which a reasonable jury could infer that said Co-defendants were personally involved in the claimed violations.

Co-defendant N.Rivera is a Penal Records Technician in the Vega Alta facility. Per the uncontested facts there is no dispute that the alleged violations to Plaintiff's rights occurred while she was incarcerated at the Ponce facility and that while Plaintiff resided in

_____

the Vega Alta facility she was granted the good time and work/study credits to her prison sentence (Docket # 113 SUF Nos. 3-6). Therefore, lacking any evidence to the contrary, it is necessary to conclude that N.Rivera committed no acts or omissions for which liability under Section 1983 could attach. Plaintiff must bear in mind that she has the burden of establishing a *prima facie* case of constitutional rights violations and failure to create an issue of fact results in the entry of summary judgment. Accordingly, Plaintiff's Section 1983 claims against Co-defendant N.Rivera will be **DISMISSED WITH PREJUDICE**.

Co-defendant L.Rivera is the Records Technician Supervisor at the Vega Alta facility. Far from presenting any evidence of Co-defendant L.Rivera's personal involvement in the denial of the time credits, Plaintiff has testified under oath that Co-defendant L.Rivera applied the time credits and that it was Co-defendant Torres who later denied said credits (Docket # 97, Ex. 12b at p. 20). Furthermore, according to the Control Sheet on Sentence Liquidation submitted by Co-defendants as exhibit, Co-defendant L.Rivera did apply the time credits which resulted in the reduction of Plaintiff's prison sentence (Docket # 97, Ex. 11b). It thus remains uncontested that Co-defendant L.Rivera applied the time credits to Plaintiff's sentence and was not involved in the subsequent denial of said time credits which caused Plaintiff to remain incarcerated after the expiration of her sentence (Docket # 113 SUF No. 3). Accordingly, there being no evidence to the contrary, we find that no reasonable jury could find that Co-defendant L.Rivera was personally involved in the violation of Plaintiff's constitutional rights. Consequently, Plaintiff's Section 1983 claims against Co-defendant L.Rivera will be **DISMISSED WITH PREJUDICE**.

### c. Co-defendant Maldonado[3]

_____

[3] Since the Court finds that there is a triable issue of fact as to Co-defendant Maldonado's personal involvement in the alleged violation of Plaintiff's constitutional rights preventing the entry of summary judgment on this ground, the Court will consider Co-defendant Maldonado's remaining arguments for dismissal, to wit, that Plaintiff lacks a liberty interest in the application of the time credits and that Plaintiff's claim is time barred. However, since these arguments are identical to the ones presented by Co-defendant

_____

As to Co-defendant Maldonado, who was Plaintiff's Socio-Penal Technician in the Ponce facility, Plaintiff avers that Co-defendant Maldonado was fully aware that Plaintiff was being denied her good time and work/study credits and did nothing to correct the situation in time thereby causing Plaintiff to remain in prison for longer than necessary (Docket # 111 at p. 3). In support of said argument, Plaintiff has included a copy of Co-defendant Maldonado's duties as a Socio Penal Technician (Docket # 113, Ex. D). Said document reflects that one of Co-defendant Maldonado's duties was to make recommendations as to the time credits to be granted to Plaintiff (Docket # 113, Ex. D at p. 2). Accordingly, at least in theory, Co-defendant Maldonado should have had some knowledge, if not an input, into the time credits that should or could have been applied to Plaintiff's sentence. Technically Co-defendant Maldonado's inaction could have resulted in the violation of Plaintiff's rights and incarceration for a longer period than warranted by law. Therefore, making all inferences in favor of Plaintiff, as we should at this juncture, we cannot eliminate the possibility that a reasonable jury could find that Co-defendant Maldonado's "administrative negligence" caused Plaintiff's damages. Pinto v. Nettleship, 737 F.2d 130, 133 (1st Cir. 1984)(stating that "administrative negligence can rise to the level of deliberate indifference" with proof of personal action or inaction within the scope of a defendant's responsibilities and could, therefore, result in damages under Section 1983) (quoting Layne v. Vinzant, 657 F,2d 468, 471 (1st Cir. 1981)).

Consequently, Co-defendants Golderos', N.Rivera's, L.Rivera's and Maldonado's motion for summary judgment is **GRANTED in part and DENIED in part** and Plaintiff's Section 1983 claims against Co-defendants Golderos, N.Rivera and L.Rivera will be **DISMISSED WITH PREJUDICE**.

### 2. Co-defendant Torres

_____

Torres in support of his motion for summary judgment, we will discuss said arguments in the second part of this Opinion.

_____

Co-defendant Torres avers that Plaintiff's Section 1983 claims should be dismissed since: (1) Plaintiff did not have a liberty interest in the time credits and prison term reductions denied, (2) Plaintiff's claims under Section 1983 are time barred, or (3) Co-defendant Torres is entitled to qualified immunity in his individual capacity (Docket # 79 at pp. 9-15). Co-defendant Torres' arguments are unavailing. We will address each one in this same order.

**a. Liberty Interest**

A liberty interest "may arise from two sources the Due Process Clause itself and the laws of the state." Browser v. Vose, 968 F.2d 105, 107 (1st Cir. 1992)(citing Hewitt v. Helms, 459 U.S. 460, 466 (1983)). Accordingly, in deciding whether a person has a liberty interest, the Court must look at the U.S. Constitution, and lacking a constitutional source, the Court must examine whether state law has created said liberty interest. It is well settled that the U.S. Constitution does not guarantee good time credits for satisfactory behavior while in prison. Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974) (holding that "a person's liberty is equally protected, even when the liberty itself is a statutory creation of the State."). Therefore, we proceed to examine Law 116 and the Puerto Rico Supreme Court decision in Pizarro Solis to see whether Plaintiff had a liberty interest in the application of good conduct and work/study credits for the reduction of her prison sentence.

"The surest source of a state-created liberty interest is an explicit grant of right in positive law not to be treated adversely absent certain conditions. Such a right may be created by statute or by prison rules and regulations." García v. Batista, 642 F.2d 11, 14 (1st Cir. 1981) (citations omitted); see e.g., Brennan v. Cunningham, 813 F.2d 1, 6-8 (1st Cir. 1987). Furthermore, in Sandin v. Conner, the U.S. Supreme Court held that instead of focusing solely "on the presence or absence of mandatory language in determining whether a statute or regulation confers a liberty interest" when "'the restraint imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably

_____

affect the duration of his sentence"' a state-created liberty interest may exist. <u>Hamm v. La Tessa</u>, 72 F.3d 947, 954 (1st Cir. 1995); <u>McGuinness v. Dubois</u>, 75 F.3d 794, 798 n. 3 (1st Cir. 1996) (<u>quoting</u> <u>Sandin v. Conner</u>, 115 S.Ct. 2293, 2292-302 (1995)). Prior to July 20, 1989 and the enactment of Law 27, Law 116 provided, as to good time credits, that:

> [a]ny person sentenced to a term of imprisonment in any institution, or who is enjoying a furlough granted pursuant to the provisions of this chapter; or who is confined in any government or private entity as part of a rehabilitation program, or who is on parole, who observes good conduct and assiduity **shall be entitled** to [ ] reductions in the term of his/her sentence.

4 P.R. Laws Ann. § 1161 (emphasis added). To this end, and as to time credits for work/study, Law 116 also states that "the Correctional Administrator, **may, in his discretion**, grant credits of not more than five (5) days for each month in which the convict is employed in an industry, or is studying as part of an institutional plan." 4 P.R. Laws Ann. § 1162 (emphasis added). It follows that even though the language pertaining to the good time credits is mandatory and an explicit creation of a right, the granting of work/study credits under Law 116 rests on the discretion of the Correctional Administrator and thus, does not appear to rise to the level of a state created liberty interest. Notwithstanding the foregoing, the Puerto Rico Supreme Court's decision in <u>Pizarro Solis</u> appears to treat both of these provisions as creating a statutory liberty interest for convicts. We explain.

    In <u>Pizarro Solis</u> the Puerto Rico Supreme Court reviewed the application of Law 27 to habitual offenders sentenced prior to its enactment on July 20, 1989. In doing so, the Puerto Rico Supreme Court reviewed the text of Sections 1161 and 1162 of Law 116 and the regulations created by the Corrections Administration pursuant to Law 116. <u>Pizarro Solis</u>, 129 D.P.R. at 918-22. The Puerto Rico Supreme Court held that per the language included in Law 116 and the aforementioned regulations, prior to July 20, 1989 and the enactment of Law 27, habitual second offenders were not foreclosed from receiving good conduct and/or work/study time credits to their prison sentence. <u>Id</u>. at 922. In reaching this conclusion, the

_____

Puerto Rico Supreme Court also held that Law 27 could not be retroactively applied to habitual second time offenders sentenced prior to its enactment, July 20, 1989. <u>Id</u>. at 927. In so doing, the Court then stated that to retroactively apply Law 27 would constitute a violation to a constitutionally protected liberty interest, created by the previous law, which did not exclude habitual second offenders from receiving said time credits. <u>Id</u>. at 928 (our translation). This liberty interest is protected by the due process of law. <u>Id</u>.

    <u>Pizarro Solis</u> leaves little room for interpretation and, without much doubt, affirms that Law 116 created a liberty interest for convicts in good conduct and work/study time credits to prison sentences. Thus, per the Puerto Rico Supreme Court, habitual second offenders, sentenced prior to July 20, 1989, have a liberty interest in the application of good conduct and work/study time credits when warranted. "Federal courts are bound by a State's interpretation of its own statute." <u>Hamm</u>, 72 F.3d at 954 (quotations omitted).

    Co-defendant Torres argues that, per the language in the <u>Pizarro Solis</u> decision, only the habitual second offenders sentenced prior to July 20, 1989 were entitled to the application of the good conduct and work/study credits. Co-defendant Torres contends that because Plaintiff was sentenced as an aggravated second offender, the holding of <u>Pizarro Solis</u> is inapplicable to her and consequently, Plaintiff lacked a liberty right to the time credits in question. While it is true that in <u>Pizarro Solis</u> the Puerto Rico Supreme Court referred only to habitual second offenders, we find that Co-defendant Torres' argument lacks merit for two reasons: (1) the Law 27 amendment, which retroactive application was found to be unconstitutional by the Puerto Rico Supreme Court as reviewed in <u>Pizarro Solis</u>, applied to both habitual offenders and aggravated offenders[4], and (2) the Corrections Administration

_____

[4] The Court notes, moreover, that pursuant to Puerto Rico law, the determination that a convict is a habitual offender entails the imposition of a harsher sentence than that of a convict who is an aggravated offender. 33 P.R. Laws Ann. § 3302. While being an aggravated offender implies a fixed penalty of twenty (20) years or double the fixed penalty by law for the crime committed with aggravating circumstances, a habitual offender is separated from society permanently by life imprisonment. <u>Id</u>. In fact, from a review of the record

_____

has adopted the view, albeit after the initial denial of the application of the time credits to Plaintiff's prison sentence, that Plaintiff did in fact have a right to the application of the same. See Docket # 113, Ex. A & Docket # 96, Exs. 46b-48b. Consequently, Co-defendant Torres' motion for summary judgment on the above-stated grounds is **DENIED**.

### b. Time Barred

Section 1983 provides a venue for vindicating federal rights elsewhere conferred. See Graham, 490 U.S. at 393-94. However, it does not contain a statute of limitations to govern those claims filed under it.  It is well-settled that state-law statute of limitations governs suits in federal courts arising under 42 U.S.C. § 1983. Owens v. Okure, 488 U.S. 235 (1989).  For such purposes, federal courts are to borrow the state law limitations period for personal injury suits. Id. Puerto Rico law imposes a one-year statute of limitations for tort actions arising out of the fault or negligence of a defendant. Art. 1868(2) of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5298. Hence, actions brought in this district under Section 1983 are subject to Article's 1868(2) one-year statute of limitations. See Graffals-González v. García-Santiago, 550 F.2d 687, 688 (1st Cir. 1977); Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir. 1997); Caler-Colón v. Betancourt-Lebrón, 68 F.3d 1, 2 (1st Cir. 1996) (citing Wilson v. Garcia, 471 U.S. 261, 276-80 (1985)); Guzmán-Rivera v. Rivera-Cruz, 29 F.3d 3, 4-5 (1st Cir. 1994). The one year statutory period begins one day after the date of accrual. Benítez-Pons v. Commonwealth of Puerto Rico, 136 F.3d 54, 59 (1st Cir. 1998) (citing Carreras-Rosa, 127 F.3d at 174).

Although federal courts resort to state law to determine the length of the statute of limitations for Section 1983 claims, federal law will determine the date of accrual. See Muñiz-Cabrero v. Ruiz, 23 F.3d 607, 610 (1st Cir. 1994). Under federal law, "Section 1983 claims accrue when the plaintiff 'knows or has reason to know, of the injury on which is the

_____

the Court notes that in pleading guilty to the offenses for which she was later imprisoned, Plaintiff negotiated downward from being sentenced as a habitual offender to an aggravated offender status.

_____

basis of the action.'" Caler-Colón, 68 F.3d at 3 (quoting Torres v. Superintendent of the Police, 893 F.2d 404, 407 (1st Cir. 1990) (citation omitted). The doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated. See Alldread v. City of Grenada, 988 F.2d 1425, 1432 (5th Cir. 1993).

Co-defendant Torres argues that, having been first denied the application of the time credits in 1996, Plaintiff knew or had reason to know of the alleged injury and knew the identity of the person causing said injury by the year 1996 (Docket # 79 at p. 12). Co-defendant Torres then avers that although the statute of limitations of Plaintiff's cause of action under Section 1983 was tolled by the judicial and administrative actions filed by her, and which concluded unfavorably for her on June 5, 1998, Plaintiff failed to take any further action to toll the one-year statute of limitations. As such, having filed the instant action in April 19, 2002, almost four years after her last claim, a cause of action for damages under Section 1983 would be time barred (Docket # 79 at pp. 12-14). Plaintiff counters that the real date of accrual for her cause of action under Section 1983 is April 24, 2001, the date she was finally released from prison (Docket # 112 at p. 6). In support of said contention, Plaintiff avers that a cause of action for damages resulting from unconstitutional convictions, sentences or false imprisonment begins to accrue on the date that the conviction or sentence is invalidated (Docket # 112 at p. 6). Accordingly, Plaintiff submits, and we agree, that Plaintiff's Section 1983 claim for damages suffered on account of her lengthened imprisonment is not time barred.

In the landmark case of Heck v. Humphrey, the U.S. Supreme Court held that:

in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into questions by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

_____

512 U.S. 477, 486-87 (1994). The U.S. Supreme Court further explained that said requirement went beyond the mere exhaustion of all available remedies, and held that it was rather a condition precedent to a cognizable Section 1983 claim. Id. at 487-89. See also Edwards v. Balisok, 520 U.S. 641, 645-46 (1997). Thus, it concluded that, once a district court determines that a judgment in favor of a plaintiff would necessarily imply the invalidity of his conviction, "the complaint [will have to] be dismissed unless the plaintiff [can] demonstrate that the conviction or sentence has already been invalidated." Id. at 487. In making this distinction, logically, the U.S. Supreme Court highlighted that since a cause of action under Section 1983 is not cognizable until a sentence or conviction is invalidated a Section 1983 "cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Id. at 489-90. See e.g. Guzmán-Rivera v. Rivera-Cruz, 29 F.3d 3, 5 (1st Cir. 1994).

In the case at bar, it is uncontested that Plaintiff remained in prison until her release on April 24, 2001 (Docket # 113 SUF No. 10). It follows that prior to said date Plaintiff's cause of action for damages under Section 1983 would have been premature since a success on that front would have implied the invalidity of her sentence.[5] Therefore, it was on April 24, 2001, when Plaintiff's sentence was finally extinguished and she was released from prison, that the one year statute of limitations began to accrue. Having filed the instant action on April 19, 2002 (see Docket # 1), Plaintiff's Section 1983 claim is not time barred. Accordingly, Co-defendant Torres' request for summary judgment on said ground is **DENIED**.

### c. Qualified Immunity

_____

[5] At that point in time, it appears that Plaintiff would have been better served by questioning the legality of her extended imprisonment through a writ of *habeas corpus*. However, for reasons which remain unclear Plaintiff chose other administrative and judicial paths (e.g. the filing of an injunction in State court).

_____

Qualified immunity constitutes a right not to stand trial or face the burdens of litigation.  See Saucier v. Katz, 533 U.S. 194, 201 (2001). The procedures regarding qualified immunity allow for judicial review, *via* certiorari, on the qualified immunity issue. Id. at 207. Thus, in order to avoid subjecting state officials to unnecessary and burdensome discovery or trial proceedings, district courts and courts of appeal should rule on the qualified immunity issue from the beginning, focusing on the characterization of the constitutional right in controversy and deciding, whether from the facts alleged in the complaint, a constitutional violation could be found.  See Id. at 201; Judge v. City of Lowell, 160 F.3d 67, 73 (1st Cir. 1998).

> A defendant can establish a qualified immunity defense in one of three ways: First, the defense should be sustained if the court finds that it was not clear at the time of the official acts that the interest asserted by plaintiff was protected by a federal statute or the Constitution. Second, even if the interest asserted by the plaintiff was clearly of a type generally protected by federal law, the defendant is entitled to immunity as a matter of law, if it was not clear at the time of the acts at issue that an exception did not permit those acts. Third, even if the contours of the plaintiffs federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of, the defendant may enjoy qualified immunity if, it was objectively reasonable for him to believe that his acts did not violate those rights.

Walsh v. Franco, 849 F.2d 66, 69 (2nd Cir. 1988) (citing Robison v. Via, 821 F.2d 913, 920-291 (2nd Cir. 1987)).  Thus, the qualified immunity inquiry is composed of a three-prong test: (1) does the complaint state a claim for relief of a constitutional right?; (2) if it does, was the constitutional right clearly established at the time of the facts alleged in the complaint?; and (3) was it objectionably reasonable for the officer to believe his actions did not violate the claimant's federally protected right?

In the instant case, Co-defendant Torres argues that he is entitled to qualified immunity since Plaintiff's right to the good conduct and work/study time credits was not clearly established at the time when he denied the application of said credits to her prison sentence in 1996 (Docket # 79 at p. 15-16). To this end, Co-defendant argues that in the Pizarro Solis decision the Puerto Rico Supreme Court referred solely to habitual second

_____

offenders and that the Corrections Administration Memorandum dated February 25, 1992 the agency also referred only to the habitual offenders and not to the aggravated second offenders (Docket # 79 at pp. 15-16). Co-defendant Torres then makes much of the two State court decisions which failed to provide Plaintiff relief from her allegations that her continued incarceration was unwarranted.

At the get go, we will dispose of Co-defendant Torres' last argument that two State court decisions failed to declare that Plaintiff was entitled to time credits and that therefore, Plaintiff's right to said credits was not clearly established. After being denied the time credits and her prison sentence recalculated, in 1996 Plaintiff filed an administrative action claiming her right to the time credits in question (Docket # 96, Ex. 22b). This action was eventually dismissed by the State court without any explanation other than "[n]othing to order" (Docket # 96, Ex. 23b). Then, on July 9, 1996 Plaintiff filed an injunction in State court again claiming relief for the denial of the time credits (Docket # 96, Ex. 24b). This action was dismissed since there was "an identical claim" pending before another judge in the State court in Ponce (Docket # 96, Ex. 25b). Finally, the claim presented in the Ponce State court was ultimately dismissed for lack of diligent prosecution (Docket # 96, Exs. 26b-29b). There are no other State court decisions used by Co-defendant Torres in support for his aforementioned argument. Furthermore, it is clear that neither of the cases discussed above disposed or even addressed Plaintiff's claims on the merits. Accordingly, Co-defendant Torres' reliance on said State court cases is meritless.

We address the rest of Co-defendant Torres' arguments by briefly restating in chronological order the pertinent course of events leading up to Plaintiff's Section 1983 claims, as these appear from the uncontested facts and the evidence in the record. Plaintiff was sentenced to twenty (20) years in prison on July 19, 1989 (Docket # 113 SUF No. 1). She began serving her sentence at the Vega Alta facility (Docket # 113 SUF No. 2). At the time she resided in the Vega Alta facility, and pursuant to Law 116, Co-defendant L.Rivera, Records Technician at the Vega Alta facility, applied the time credits for good conduct and

_____

work/study to Plaintiff's prison sentence (Docket # 113 SUF No. 3). In 1993 Plaintiff was transferred to the Ponce facility (Docket # 113 SUF No. 4). On January 31, 1992, the Puerto Rico Supreme Court issued the <u>Pizarro Solis</u> decision holding that Law 27 could not be retroactively applied to habitual second offenders who were sentenced prior to July 20, 1989 (Docket # 96, Ex. 39b).

On February 25, 1992 the Corrections Administration issued a memorandum discussing the Puerto Rico Supreme Court's decision in <u>Pizarro Solis</u> and instructing Records Technicians that habitual second offenders, sentenced prior to July 20, 1989, were eligible for good conduct and work/study time credits (Docket # 96, Ex. 40b). Sometime in 1996, Co-defendant Torres, the Records Technician at the Ponce facility, discontinued the application of the time credits and recalculated Plaintiff's sentence (Docket # 113 SUF No. 6). Then, on December 4, 1996, Co-defendant Torres wrote a letter to the Operations Director of the Ponce facility informing her of his interpretation of the <u>Pizarro Solis</u> decision and that he had recalculated Plaintiff's sentence to exclude the time credits for good conduct and work/study since Plaintiff had been sentenced as an aggravated second offender and not as an habitual second offender (Docket # 96, Ex. 41b). In response to said letter, on December 30, 1996, Atty. Epifanio Dávila-Rodríguez from the Office of Legal Affairs of the Corrections Administration directed a letter to Co-defendant Torres informing him that his interpretation of the <u>Pizarro Solis</u> decision was incorrect and that Plaintiff's sentence should be recalculated to include the time credits at issue (herein the "December 1996 Memorandum") (Docket # 96, Ex. 42b). Co-defendant Torres disagreed with Atty. Dávila-Rodríguez's interpretation and referred the case for reevaluation by the Legal Division of the Corrections Administration (Docket # 96, Ex. 43b).

Again, on March 13, 1997, Atty. Dávila-Rodríguez, this time through Atty. Alfredo Segarra, Interim Director of Legal Affairs of the Corrections Administration and with the approval of Atty. Zoe M. Laboy-Alvarado, Secretary of the Corrections Administration, restated his interpretation of the <u>Pizarro Solis</u> decision and directed Co-defendant Torres to

_____

apply the time credits to Plaintiff's sentence (herein the "March 1997 Memorandum")
(Docket # 96, Ex. 44b). On March 26, 1997, the March 1997 Memorandum was sent to all
Records Technicians by Ms. Edalish Rodríguez-Salcedo, Interim Director of the Division of
Criminal Records, with instructions that the procedure contained therein should be followed
**with respect to all second offenders** sentenced prior to July 27, 1989 (herein the
"Instructions to Records Technicians") (Docket # 113, Ex. A).

Finally, on April 23, 2001, upon the request of Atty. Dávila-Rodríguez the
Corrections Administration issued another memorandum stating that Plaintiff and others
alike were entitled to the time credits in question (Docket # 96, Ex. 46b). On April 24, 2001
Atty. Victor Rivera, Secretary of the Department of Correction and Rehabilitation, ordered
that Plaintiff be immediately released from prison as "she already complied with her sentence
approximately 23 months ago." (Docket # 96, Exs. 47b-48b).

Co-defendant Torres' arguments in support of his contention that the qualified
immunity shields him from liability focus on the first two prongs of the qualified immunity
analysis: (1) did Plaintiff have a constitutional right to the time credits in question? and (2)
was said right clearly established at the time of Co-defendant Torres' refused the application
of the time credits to Plaintiff's prison sentence? As to the first prong, we answer in the
affirmative. We specifically addressed this concern in Part 2(a) of this Opinion. There, we
held that per Puerto Rico law, as well as its interpretation by the Corrections Administration,
Plaintiff had a liberty interest in the application of the good conduct and work/study credits.
Accordingly, we move to the second part of this analysis.

The second prong focuses on whether the state of the law in Puerto Rico **at the time
of the putative violation** afforded Co-defendant Torres fair warning that his conduct of
denying the application of the good conduct and work/study credits violated Plaintiff's
constitutional right. Limone v. Condon, 372 F3d 39, 45 (1st Cir. 2004)(citation omitted). Per
the uncontested facts, the denial of the application of time credits for good conduct and
work/study to Plaintiff's prison sentence took place from 1996 until April of 2001, when

_____

Plaintiff was finally released from prison. Having delineated the events which led to the

initiation of the instant action and per the evidence in the record, we find that Co-defendant

Torres was forewarned, if not by the Pizarro Solis decision, then after the December 1996

Memorandum, that his conduct could result in a violation of Plaintiff's rights.

       Co-defendant Torres first denied the application of the time credits to Plaintiff's

sentence in 1996, however, it was his continued denial, even after being advised otherwise

in not one but three separate occasions that persuade the Court to find that Co-defendant

Torres received fair warning that his actions could violate Plaintiff's rights. The Court

conceives of the possibility that after the Pizarro Solis decision in 1992 and up to 1996, upon

his first denial of the time credits application, that Co-defendant Torres could have doubts

as to whether the time credits at issue applied to Plaintiff's prison sentence or not. However,

a representative from the Corrections Administration's Legal Affairs Office **not once but**

**twice** interpreted the state of the law and informed Co-defendant Torres that he was incorrect

in his appreciation of the law (i.e. the December 1996 Memorandum and the March 1997

Memorandum). Co-defendant Torres also had the benefit of the Instructions to Records

Technicians which specifically instructed that Plaintiff was indeed entitled to the application

of the time credits at issue. Notwithstanding the foregoing, much to Plaintiff's demise, Co-

defendant Torres chose to ignore said instructions and the Corrections Administration Legal

Affairs position at his own peril. Thus, we find that at least after the issuance of the

Instructions to the Records Technicians in 1997, a reasonable officer would have known that

his conduct violated Plaintiff's rights. "The relevant dispositive inquiry in determining

whether a right is clearly established is whether it would be clear to a reasonable officer that

his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202 (citations

omitted). Consequently, Co-defendants Torres' request for summary judgment on the above-

stated ground is **DENIED**.

       **II. Supplemental Law**

       Having dismissed all of Plaintiff's federal claims against Co-defendants Golderos,

_____

L.Rivera and N.Rivera, we will similarly dismiss Plaintiff's Commonwealth law claims against said Co-defendants. See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991); Deniz v. Mun. of Guaynabo, 285 F.3d 142, 149 (1st Cir. 2003)(affirming the district court's dismissal without prejudice of plaintiff's supplemental law claims under local law). Accordingly, Plaintiff's supplemental law claims under the laws of the Commonwealth of Puerto Rico against Co-defendants Golderos, L.Rivera and N.Rivera will be **DISMISSED WITHOUT PREJUDICE**.

### Conclusion

For all the reasons discussed above, Plaintiff's Section 1983 claims against Co-defendants Golderos, L.Rivera and N.Rivera are **DISMISSED WITH PREJUDICE** and Plaintiff's supplemental law claims against said Co-defendants are **DISMISSED WITHOUT PREJUDICE**. Pending for adjudication are Plaintiff's claims against Co-defendants Maldonado and Torres. Partial Judgment shall be entered accordingly. **A Pretrial and Settlement Conference is set for December 21, 2005 at 2:30 p.m. The parties are instructed to file an Amended Joint Pretrial Memorandum by no later than December 1, 2005.**

**SO ORDERED.**
In San Juan, Puerto Rico, this 18th day of November, 2005.

S/ Salvador E. Casellas
SALVADOR E. CASELLAS
U.S. Senior District Judge